IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

IVA D. CAMPBELL                                                    PLAINTIFF

V.                                        NO. 15-2050

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Iva D. Campbell, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff filed her applications for DIB and SSI on June 2, 2012, alleging disability since November 28, 2011, due to anxiety, depression, fibromyalgia, lupus, arthritis, and high blood pressure. (Tr. 69-73, 75). An administrative hearing was held on June 13, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 288-328).

By written decision dated August 30, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – fibromyalgia and obesity. (Tr. 17). However, after reviewing all of the evidence presented,

1

the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can occasionally climb, balance, crawl, kneel, stoop, and crouch.

(Tr. 19). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as clerical worker, assembler, and machine tender. (Tr. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information, and denied that request on January 23, 2015. (Tr. 3-7). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 11, 12).

## II.    Evidence Presented:

Plaintiff was born in 1965, and the records reveal that on August 14, 2006, Plaintiff suffered from aching joints. (Tr. 231). Plaintiff made a visit to the doctor in 2007, complaining of increased anxiety while on menses, (Tr. 229), and the next physician visit was on April 16, 2009, when she was assessed with essential hypertension, arthritis, and anxiety disorder NOS. (Tr. 227). The next physician office visit was on August 10, 2010, when she complained of arthritis pain, and was assessed with secondary diagnosis of arthritis; primary diagnosis of essential hypertension; and secondary diagnosis of anxiety disorder NOS. (Tr. 212).

2

Plaintiff began seeing Dr. Kelli Rippy, of River Valley Primary Care Services, on November 1, 2010, when she was assessed with hypertension. (Tr. 211).  Plaintiff next saw Dr. Rippy on February 21, 2011, needing her blood pressure medicine refilled, and thought she had a urinary tract infection, and believed she pulled a muscle in her back.  She was assessed with hypertension and lumbago. (Tr. 211).  Two days later, Plaintiff returned to Dr. Rippy, complaining of a severe headache. (tr. 210).  She was assessed with hypertension and a headache. (Tr. 210).  Plaintiff next saw Dr. Rippy on May 6, 2011, for a checkup and was assessed with primary diagnosis of arthralgias; secondary diagnosis of arthritis; secondary diagnosis of anxiety disorder NOS; hypertension which was inadequately controlled; and fatigue. (Tr. 209).  On June 15, 2011, Plaintiff reported to Dr. Rippy that she went to the emergency room with high blood pressure and they took her off the Norvasc and started her back on atenolon and decreased her Celexa. (Tr. 208).  Plaintiff reported that she was doing pretty well without the Celexa, but she still complained of fatigue, swelling and pain in her joints. (Tr. 208).  She was assessed with secondary diagnosis of arthritis, hypertension, and fibromyalgia. (Tr. 208).  On August 11, 2011, Plaintiff reported to Dr. Rippy that she was in constant pain and was assessed with hypertension and fibromyalgia. (Tr. 207).

On September 29, 2011, Plaintiff presented herself to Jeannie Finley, MSN, APN, of Arkansas Heart Center, and was assessed with a rash; myalgia and mysositis unspecified; unspecified arthropathy, site unspecified; anxiety state unspecified; depressive disorder not elsewhere classified; and pain in joint site unspecified. (Tr. 164). Plaintiff returned to Arkansas Heart Center on December 14, 2011, complaining that her fibromyalgia and arthritis had flared up and she had been having problems with her blood pressure. (Tr. 159). Plaintiff's diagnosis remained the same. (T. 161).

3

Plaintiff presented herself to Dr. Rippy on July 16, 2012, for a checkup of her blood pressure, anxiety, and medication refills. (Tr. 202).  Plaintiff reported to Dr. Rippy that Ms. Finley told her she had lupus based on her blood work, and was going to schedule her to see a rheumatologist at Little Rock. (Tr. 202). Dr. Rippy assessed Plaintiff with fibromyalgia, hypertension, and depression. (Tr. 202).

On July 20, 2012, non-examining consultant, Dr. Jonathan Norcross, completed a Physical RFC Assessment. (Tr. 193-200).  Dr. Norcross found that the records supported a sedentary RFC with postural limitations. (Tr. 200).

On August 23, 2012, Terry Efird, Ph.D., completed a Mental Diagnostic Evaluation. (Tr. 172-175).  A history of inpatient and outpatient mental treatment was denied by Plaintiff. (Tr. 172).  Dr. Efird diagnosed Plaintiff as follows:

> Axis I:        generalized anxiety disorder; depressive disorder NOS
> Axis II:       deferred
> Axis V:        55-65

(Tr 174).  Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner; communicated in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities; appeared able to track and respond adequately; generally completed most tasks during the evaluation and appeared to have the mental capacity to persist with tasks if desired; and appeared to be capable of performing basic work like tasks within a reasonable time frame. (Tr. 175).

On August 27, 2012, non-examining consultant, Dan Donahue, Ph.D., completed a Psychiatric Review Technique form, finding that Plaintiff had a mild degree of limitation in all categories and no episodes of decompensation, and concluded that Plaintiff's alleged mental impairments were non-severe. (Tr. 179-191).

4

On October 9, 2012, Ms. Finley reported that she was going to "do a little experimentation" with Plaintiff by modifying some of her medications, and was going to re-check her in one month. (Tr. 240).

On January 8, 2013, non-examining consultant, Dr. Ronald Crow, completed a Case Analysis, wherein he affirmed the assessment of July 20, 2012. (Tr. 251).   On January 9, 2013, non-examining consultant, Dr. Winston Brown, completed a Case Analysis, affirming the initial rating. (Tr. 250).

On January 18, 2013, Ms. Finley reported that she was going to get a MRI/MRA of Plaintiff's brain and get her in with Dr. Lipsmeyer at the Rheumatology Department at UAMS. (Tr. 264).   Ms. Finley also reported that Plaintiff was tolerating all of her medications at that time. (Tr. 264).

On February 15, 2013, Ms. Finley reported that she was going to give Plaintiff Levaquin 500 mg 1 daily, and give her Cymbalta samples. (Tr. 268).   On that same date, Ms. Finley completed a Medical Source Statement (Physical), which consisted of a form which contained blocks for her to check.   Ms. Finley basically reported that Plaintiff had severe limitations. (Tr. 148-150).

On October 16, 2013, approximately one and a half months after the ALJ issued his decision, David Furr, D.O., completed a Medical Source Statement, which consisted of a form which contained blocks for him to check. (Tr. 285-287).   Dr. Furr also basically reported that Plaintiff had severe limitations which would prevent her from performing even sedentary work. (Tr. 287).

On January 23, 2015, the Appeals Council reported that it considered Dr. Furr's report, and stated that as the ALJ decided his case through August 30, 2013, the new

information was about a later time. "Therefore, it does not affect the decision about whether you were disabled beginning on or before August 30, 2013." (Tr. 4). The Council also stated that if Plaintiff wanted them to consider whether she was disabled after August 30, 2013, she needed to apply again. (Tr. 4).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.   See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV.    Discussion:

Plaintiff raises the following issues in this matter:  1)  Whether the ALJ erred in his determination of severe impairments; 2) Whether the ALJ erred in his credibility analysis; 3) Whether the ALJ failed to properly develop the record; 4) Whether the ALJ erred in his RFC determination; and 5)  Whether the ALJ erred in finding there were other jobs Plaintiff would be able to perform. (Doc. 11).

### A.     Severe Impairments:

Plaintiff argues that her alleged mental impairments and high blood pressure are severe impairments.  An impairment is severe within the meaning of the regulations if it

7

significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen**,** 870 F.2d 1392, 1395 (8th Cri. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'"  Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015)(quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007).

In his decision, the ALJ addressed Plaintiff's alleged mental impairments, noting that Dr. Efird stated Plaintiff's mood was normal with no remarkable indications of acute emotional distress.  He also noted that Dr. Efird reported that some degree of adjustment difficulty was probable due to Plaintiff's report that her symptoms had become more severe since her brother passed away in May of 2012. (Tr. 17).  The ALJ then addressed the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of impairments, and concluded that Plaintiff had mild limitation in daily living, social functioning, and concentration, persistence or pace. He also found Plaintiff had experienced no episodes of decompensation which had been of extended duration. (Tr.18).  The ALJ concluded that because Plaintiff's medically determinable mental impairment caused no more than "mild" limitation and no episodes of decompensation, they were non-severe. (Tr.18).

The record fails to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. (Tr. 172).  At the

8

hearing, Plaintiff testified that although she was still being treated for depression and anxiety, she was not being treated by a psychologist or psychiatrist. (Tr. 312).  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). In addition, in his report, Dr. Efird's conclusions regarding Plaintiff's ability to function were reviewed and considered and found to be non-severe by Dan Donahue, Ph.D., on August 27, 2012. (Tr. 191).  Subsequent thereto, on January 18, 2013, Dr. Rippy reported that Plaintiff was tolerating all of her medications, and assessed her with hypertension, fibromyalgia, and fatigue. (Tr. 252).

Considering the opinions reached by Dr. Efird, Dr. Donahue, as well as the other relevant medical records, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairments are not severe.

Regarding Plaintiff's high blood pressure, although Plaintiff was diagnosed with hypertension frequently, a mere diagnosis is not sufficient to prove a severe impairment, absent some evidence to establish a functional loss resulting from that diagnosis.  See Buckner v. Astrue, 646 F.3d 549, 556-557 (8th Cir. 2011).  Plaintiff has failed to point to any evidence which shows functional limitations related to her blood pressure.  In addition, on January 18, 2013, Ms. Finley reported that Plaintiff was tolerating medications well, and assessed Plaintiff with anxiety, insomnia, chronic pain and fibromyalgia, and no mention was made of high blood pressure. (Tr. 264). On January 21, 2013, Dr. Rippy reported that Plaintiff's "blood pressure today is slightly elevated but improved from previous" and that Plaintiff "does check it periodically at home and it is doing better at home." (Tr. 252).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's determination of severe impairments.

### B.      Credibility Analysis:

Plaintiff argues that in his decision, the ALJ failed to carry out the requirements set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, although the ALJ does not mention the Polaski case, he did address all of the alleged symptoms in accordance with the regulations in 20 C.F.R. §§ 404.1529, 416.929 and relevant SSR 96-4p, 1996 WL 374187, and SSR 96-7p, 1996 WL 374186. (Tr. 19). See Buckner, 646 F.3d at 558. "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). The ALJ addressed Plaintiff's daily activities, the fact that Plaintiff received conservative medical treatment for her muscular aches and joint pain, and the fact that there is no indication that Plaintiff sought recommended follow-up treatment

with a rheumatologist. (Tr. 20). The ALJ considered and discussed Plaintiff's subjective pain and discomfort, finding that some degree of pain was substantiated by the record, but concluding that her relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of his RFC. (Tr. 20).

Based upon the foregoing, as well as for those reasons given in Defendant's well stated brief, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C.      Failure to Properly Develop the Record:

Plaintiff argues that the ALJ should have had Dr. Efird complete a Medical Source Statement. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the

Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." <u>Mans v. Colvin,</u> No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting <u>Battles v. Shalala</u>, 36 F.3d 43, 45 (8th Cir. 1994).

The ALJ had before him Dr. Efird's evaluation, which, as more specifically set forth above, provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged mental impairments. The Court also believes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding Plaintiff's mental limitations and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged mental impairments.

The Court believes Plaintiff's argument on this issue is without merit.

### D.    RFC Determination:

Plaintiff argues that the ALJ did not include the appropriate physical limitations in the RFC, and that he wrongly dismissed the opinion of Ms. Finley. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. <u>Id</u>. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. <u>Lewis v. Barnhart</u>, 353 F.3d 642, 646 (8th Cir. 2003).

"[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at \*15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at \*3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

As stated earlier, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain postural limitations. (Tr.19). In making this determination, the ALJ considered the medical records regarding Plaintiff's fibromyalgia, the medications she was taking, Plaintiff's obesity, and Plaintiff's pain and discomfort. He also considered and gave little weight to the Medical Source Statement completed by Ms. Finley, concluding that she was not a licensed medical doctor and that her assessment was not well supported by the other substantial evidence of record. (Tr. 20).

13

Plaintiff argues that the medical records from Ms. Finley and Dr. Furr make it clear that an eight-hour work schedule is not possible for Plaintiff.  In his decision, the ALJ did not dismiss Ms. Finley's decision, but considered it and gave it little weight, not only because she was not an acceptable medical source, but also because her treatment records did not support her conclusions. (Tr. 20).  Additionally, Ms. Finley merely checked the boxes on a form and referred to Plaintiff's "performance" as a basis for the opinion. (Tr. 150).  The Eighth Circuit has held that an ALJ may discount a physician's opinion when it consists of a checklist form, cites to no medical evidence, and provides little to no elaboration. Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010).

With respect to the Medical Source Statement submitted by Plaintiff from Dr. Furr, said document was submitted only after the ALJ issued his decision.  Plaintiff apparently had no prior relationship with Dr. Furr, and the statement reflects Dr. Furr's opinion regarding the Plaintiff's condition after the relevant time period.  "An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later acquired disabilities or subsequent deterioration of a previously non-disabling condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997).  "Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits." Id.  Furthermore, the medical records relating to the relevant time period do not support the severe limitations reflected in Dr. Furr's Medical Source Statement. However, Plaintiff's new evidence may be grounds for a new application for benefits.

      **E**      **Hypothetical Question:**

In his interrogatories to the VE, the ALJ posed the following question:

#7 – Assume a hypothetical individual who was born on January 30, 1965, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6. Assume further that individual has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb, balance, crawl, kneel, stoop, and crouch.

#8.  Could the individual described in item #7 perform any of the claimant's past jobs as actually performed by the claimant or as normally performed in the national economy?

No. – exertion level of past employment exceeds sedentary.

#10. Could the individual described in item #7 perform any unskilled occupations with jobs that exist in the national economy?

Yes:  Clerical Worker; Assembler; and Machine Tender. . . .

Each DOT number is representative of a group of occupations in each category.

(Tr. 153-154)

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the duties of clerical worker, assembler, and machine tender. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

15

**IV.     Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of January, 2016.

s/ *Erin L. Setser*
            HON. ERIN L. SETSER
            UNITED STATES MAGISTRATE JUDGE